# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **EDWARD E. BINTZ,** | : CIVIL ACTION NO. 1:16-CV-1024 |
| Plaintiff | : (Chief Judge Conner) |
| v. | : |
| **THE FEDERAL EMERGENCY MANAGEMENT AGENCY, THE DEPARTMENT OF HOMELAND SECURITY, and W. CRAIG FUGATE,** | : |
| Defendants | : |

## MEMORANDUM

Plaintiff Edward E. Bintz ("Bintz") commenced this action against defendants for judicial review of a final agency action by the Federal Emergency Management Agency ("FEMA") pursuant to the National Flood Insurance Act, 42 U.S.C. § 4001 *et seq.* Bintz appeals an order of the magistrate judge denying his motion (Doc. 24) to supplement the administrative record and for leave to conduct discovery.

## I.  Factual Background & Procedural History[1]

FEMA administers the National Flood Insurance Program pursuant to the National Flood Insurance Act. (Doc. 1 ¶ 20; Doc. 8 ¶ 20). The purpose of the program is to "enable interested persons to purchase [flood] insurance against loss resulting from physical damage to or loss of real property or personal property." 42 U.S.C. § 4011(a). To achieve this goal, FEMA adopts flood insurance studies and

---

[1] The above narrative derives from Bintz's complaint (Doc. 1) and defendants' answer (Doc. 8).

flood insurance rate maps to assess and to delineate flood risk within a given community.  See 42 U.S.C. §§ 4012, 4102; (Doc. 1 ¶ 21; Doc. 8 ¶ 21).  A flood insurance rate map establishes the base flood elevation—a computed elevation to which floodwater is expected to rise during the base flood[2]—for properties in areas susceptible to flooding.  (Doc. 1 ¶ 21; Doc. 8 ¶ 21).  Coastal base flood elevations are assigned according to "transects" which are cross sections of a beach that run perpendicular to the shoreline.  (Doc. 1 ¶ 21; Doc. 8 ¶ 21).  Together, base flood elevations and flood insurance rate maps are used to set premiums for federal flood insurance policies.  (Doc. 1 ¶ 22; Doc. 8 ¶ 22).

Bintz's Ocean Drive property is located in transect 1610 in South Bethany, Delaware.  (Doc. 1 ¶ 22; Doc. 8 ¶ 22).  FEMA issued a preliminary flood insurance rate map in December 2013 ("2013 Preliminary Map") which reduced the base flood elevation for South Bethany properties, including transect 1610, from 12 feet to 10 feet.  (Doc. 1 ¶ 47).  In April 2014, George Junkin ("Junkin"), a South Bethany town councilman, sent an email to FEMA stating, *inter alia*, that the base flood elevation for Ocean Drive properties should remain at 12 feet.  (Id. ¶ 50; Doc. 8 ¶ 50).  In response to Junkin's letter, FEMA revised the 2013 Preliminary Map to increase the base flood elevation from 10 feet to 13 feet for properties on Ocean Drive.  (Doc. 1 ¶ 52; Doc. 8 ¶ 52).  The revised 2013 Preliminary Map became final on September 16, 2014 ("2014 Map").  (Doc. 1 ¶ 54).

---

[2] The base flood is "a flood having a one percent chance of being equalled or exceeded in any given year."  44 C.F.R. § 59.1.

The town of South Bethany and residents thereof lodged objections to the 2014 Map.[3] (Id. ¶ 55). FEMA rescinded the South Bethany portion of the 2014 Map on or about February 25, 2015 and the base flood elevation for properties on Ocean Drive remained at 2005 levels—12 feet. (Id.; Doc. 8 ¶ 55). Bintz submitted a Freedom of Information Act ("FOIA") request on March 29, 2015 seeking information regarding changes in FEMA's erosion analysis which led to the base flood elevation increase from 10 to 13 feet in the 2014 Map. (Doc. 1 ¶ 63; Doc. 8 ¶ 63). FEMA purportedly provided a partial response to Bintz's FOIA request on March 29, 2016. (Doc. 1 ¶ 63). FEMA proposed a new preliminary map on May 18, 2015 ("2015 Preliminary Map") which reassigned a 13-foot base flood elevation to Ocean Drive properties in South Bethany. (Id. ¶ 56; Doc. 8 ¶ 56). FEMA hosted an open house presentation for South Bethany residents on June 12, 2015 to explain the 2015 Preliminary Map. (Doc. 1 ¶ 57). Bintz and South Bethany appealed the base flood elevation determination in the 2015 Preliminary Map in January 2016. (Id. ¶¶ 63-65, 68-69; Doc. 8 ¶¶ 68-69). FEMA denied both appeals on April 6, 2016. (Doc. 1 ¶ 70; Doc. 8 ¶ 70).

FEMA project engineer Robert Pierson ("Pierson") agreed to discuss with Bintz the reasons for FEMA's denial of his appeal. (Doc. 1 ¶ 64; Doc. 8 ¶ 64). During an April 22, 2016 telephone call, Pierson responded to some of Bintz's inquiries and ostensibly agreed to respond to additional questions by email. (Doc. 1 ¶ 65). Bintz

---

[3] The South Bethany mayor advised FEMA by letter dated December 15, 2014 that averments in Junkin's email were made by Junkin in his individual capacity and not as a representative of the town. (Doc. 1 ¶ 53; Doc. 8 ¶ 53).

3

submitted questions to Pierson by email on April 28, 2016 and, upon Pierson's request, by letter on May 2, 2016. (Id. ¶ 66; Doc. 8 ¶ 66; Doc. 25-6). Bintz avers that FEMA never responded to these subsequent inquiries. (Doc. 1 ¶ 67). FEMA also received a supplemental submission from Bintz in May 2016 following the denial of his appeal. (Id. ¶ 71; Doc. 8 ¶ 71). FEMA reaffirmed its denial of Bintz's appeal on August 5, 2016. (Doc. 1 ¶ 72; Doc. 8 ¶ 72). The 2015 Preliminary Map became final on September 7, 2016 ("2016 Map"). (Doc. 1 ¶ 8; Doc. 8 ¶ 8).

Bintz commenced the instant appeal on November 4, 2016 pursuant to 42 U.S.C. § 4104(g) and 44 C.F.R. § 67.12(a). (Doc. 1). Bintz seeks reversal of FEMA's denial of his appeal, implementation of the 10-foot base flood elevation established in the 2013 Preliminary Map for transect 1610, and a temporary stay of FEMA's implementation of the 2016 Map during the pendency of this action. (Id. at 32). Defendants filed an answer on January 24, 2017. (Doc. 8). FEMA compiled and submitted an administrative record comprised of documents relied upon in determining base flood elevation for South Bethany's coastline. (Doc. 11). Following discussions between the parties about the completeness of the administrative record, FEMA supplemented the record on May 10, 2017. (Docs. 15, 17-23).

On June 5, 2017, Bintz filed a motion to supplement the record and for leave to conduct discovery. (Doc. 24). Bintz sought:

- Supplementation of the administrative record to include two photographs and a map submitted to FEMA identifying street locations and flood insurance rate map transects on Ocean Drive. (Doc. 25 at 19-20 ¶ 1).

4

- Supplementation of the administrative record to include Bintz's appeal of FEMA's FOIA response and letters from the Office of Administrative Law Judges in response thereto. (Id. at 20 ¶ 2).

- Discovery of information and documents responsive to questions posed to FEMA in Bintz's May 2, 2016 letter. (Id. at 20 ¶ 3).

- Discovery of information and documents that reflect the "extra replenishment" the neighboring town of Bethany Beach received which was purportedly unnecessary and not provided to South Bethany. (Id.)

- Discovery of information and documents that (1) reflect whether or not Compass PTS JV ("Compass") was an independent evaluator of FEMA's base flood elevation determinations and (2) provide factual context surrounding FEMA's obtaining of the "Compass Memorandum." (Id.)

- Discovery of documents responsive to Bintz's FOIA request which FEMA purportedly withheld. (Id. at 20 ¶ 4).

The court referred Bint'z motion to Chief Magistrate Judge Mary Pat Thynge for resolution on August 29, 2017. (Doc. 29). Judge Thynge issued a memorandum order denying Bintz's motion *in toto*. (See Doc. 30). Bintz appealed Judge Thynge's order on November 2, 2017. (Doc. 31). The appeal is fully briefed and ripe for disposition.

## II. **Legal Standard**

A district court may refer a nondispositive motion to a magistrate judge "to hear and determine." 28 U.S.C. § 636(b)(1)(A). Following timely objection by either party, the court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Findings of fact are reviewed for clear error and matters of law *de novo*. Equal Employment Opportunity Comm'n v. City of Long Branch, 866 F.3d 93, 99 (3d Cir.

5

2017) (citing Haines v. Liggett Grp. Inc., 975 F.2d 81, 91 (3d Cir. 1992)). Any objection to the magistrate judge's order not timely raised is waived. Id.

III. **Discussion**

The court may "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In making this determination, the court is limited in its review to the full record before the agency at the time of its decision or those parts of it cited by a party. Id. § 706; see also Tinicum Twp., Pa. v. U.S. Dep't of Transp., 685 F.3d 288, 294 (3d Cir. 2012) (citing C.K. v. N.J. Dep't of Health & Human Servs., 92 F.3d 171, 182 (3d Cir. 1996)). If an agency certifies that the administrative record is full and complete, the court "assumes that the agency properly designated the Administrative Record absent clear evidence to the contrary." Citizens Advisory Comm. on Private Prisons v. Fed. Bureau of Prisons, 197 F. Supp. 2d 226, 240 (W.D. Pa. 2001) (citations omitted).

A. **Supplementation of the Administrative Record**

There is a strong presumption against supplementing the administrative record in an action governed by the Administrative Procedures Act, 5 U.S.C. § 551 *et seq*. NVE, Inc. v. Dep't of Health & Human Servs., 436 F.3d 182, 189 (3d Cir. 2006); see also Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs., 730 F.3d 291, 305 (3d Cir. 2013). A court's review of agency action must be based on the existing administrative record, not "some new record made initially in the reviewing court" or "post-hoc rationalizations" by the agency in question. Christ the King Manor, 730 F.3d at 305 (quoting Rite Aid of Pa., Inc. v. Houstoun,

6

171 F.3d 842, 851 (3d Cir. 1999)). We may look beyond the administrative record only "when the action is adjudicatory in nature and the agency factfinding procedures are inadequate," or "when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action." NVE, 436 F.3d at 189 (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971)).

Neither circumstance exists *sub judice*. Bintz challenges agency rulemaking, not adjudicative action, see 42 U.S.C. § 4101b(d), and FEMA considered the substantive issues raised in the instant matter during the administrative proceedings. Hence, the photographs and map (Doc. 25-8), Bintz's appeal of FEMA's FOIA response (Doc. 25-2), and the correspondence from the Office of Administrative Law Judges (Docs. 25-3, 25-4) are impermissible supplements to the administrative record.

### B. Additional Discovery

Discovery into administrative proceedings is strongly disfavored so as to preserve the integrity and independence of the administrative process. NVE, 436 F.3d at 195. Parties may not attempt to "probe the thought and decision making process of judges and administrators" through additional discovery on appeal. Id. (quoting Grant v. Shalala, 989 F.2d 1332, 1344 (3d Cir. 1993)). The Third Circuit recognizes an exception to this presumption "*only* in cases involving alleged bias on

the part of an agency."[4]  Id. (emphasis added) (citing Grant, 989 F.2d at 1344).  A plaintiff must demonstrate that improper bias "permeate[d] an agency's decisionmaking."  Am. Bankers Ass'n v. Nat'l Credit Union Admin., 513 F. Supp. 2d 190, 201 (M.D. Pa. 2007).  Bintz seeks discovery on four discrete issues.  (See Doc. 25 at 20 ¶¶ 3-4).  The court will address these issues *seriatim*.

1. ***May 2, 2016 Letter***

Bintz first seeks discovery of information and documents responsive to multiple questions submitted to FEMA in his May 2, 2016 letter.  (Id. at 14-15, 20).  He avers that FEMA project engineer Pierson "reneged on [his] agreement" to answer additional written questions following an April 2016 telephone call.  (Doc. 31 at 6).  Bintz provides no legal authority for the proposition that FEMA had an

---

[4] Some district courts have interpreted *dicta* in NVE as creating a second exception to the prohibition on discovery in appeals governed by the Administrative Procedures Act.  See, e.g., Uddin v. Mayorkas, 862 F. Supp. 2d 391, 400 (E.D. Pa. 2012).  Under this purported second exception, a party seeking discovery must show that the administrative record is so incomplete that it inhibits a reviewing court's ability to decide whether an agency's decision was arbitrary or capricious.  Am. Farm Bureau Fed'n v. U.S. E.P.A., No. 1:11-CV-0067, 2011 WL 6826539, at *10 (M.D. Pa. Dec. 28, 2011); Am. Bankers Ass'n v. Nat'l Credit Union Admin., 513 F. Supp. 2d 190, 202 (M.D. Pa. 2007); but see State of Delaware Dep't of Nat. Res. & Envtl. Control v. U.S. Army Corp of Eng'rs, 722 F. Supp. 2d 535, 546 (D. Del. 2010).  A district court evaluating a request for discovery based on the incompleteness of the record should consider three factors: "(1) the clarity of agency procedures that define the scope of an administrative record; (2) an indication that important documents were missing from the record; and (3) the size of the record."  Am. Bankers Ass'n, 513 F. Supp. 2d at 202.  The magistrate judge evaluated Bintz's discovery requests under both the agency bias and record incompleteness exceptions.  (See Doc. 30 at 8).  We are not persuaded that the Third Circuit would sanction a record incompleteness exception to the prohibition on discovery based upon the above-referenced three-factor test.  Hence, we will only review Bintz's discovery requests for clear evidence of agency bias in the decisionmaking process.  See State of Dela., 722 F. Supp. 2d at 546; Am. Bankers Ass'n, 513 F. Supp. 2d at 201.

8

obligation to respond to his post-appeal inquires. (See Docs. 25, 31). Pierson's decision not to communicate with Bintz as promised following the April 2016 telephone call does not constitute agency bias in the decisionmaking process sufficient to warrant discovery beyond the scope of the administrative record. Moreover, this alleged promise occurred after FEMA made its base flood elevation determination. The magistrate judge did not err in denying Bintz's request to conduct discovery for information and documents responsive to his May 2, 2016 letter.

### 2. *Extra Replenishment for Bethany Beach*

The magistrate judge rejected Bintz's second request for discovery of information and documents reflecting the differences in beach replenishment received by South Bethany and the neighboring town of Bethany Beach. (Doc. 30 at 10-11). The United States Army Corps of Engineers completed a beach nourishment project in 2008 for several Delaware towns including South Bethany and Bethany Beach. (Doc. 1 ¶ 42; Doc. 8 ¶ 42). Since the 2008 project, in the aftermath of two severe coastal storms, South Bethany received two maintenance nourishments and Bethany Beach received three such nourishments. (Doc. 1 ¶ 45). Bintz contends that the additional replenishment that Bethany Beach received illustrates that South Bethany does not incur "unique" erosion compared to neighboring communities with lower base flood elevations. (Doc. 31 at 9-10; see also Doc. 1 ¶ 86; Doc. 25 at 17-18). Except in limited circumstances, FEMA does not consider the effects of beach nourishment projects in creating flood insurance rate maps. (Doc. 27 at 12-13; Doc. 17 at 17).

Bintz asserts that FEMA failed to supplement the administrative record with information and documents reflecting Bethany Beach's extra replenishment after agreeing to do so in an April 14, 2017 letter. (Doc. 25 at 18). He further avers that the documents FEMA added were nonresponsive. (Id.) This omission does not establish bad faith or bias by FEMA. In a July 7, 2017 letter, FEMA clarified that it initially misunderstood Bintz's request and supplemented the record with documents based on their erroneous interpretation. (Doc. 28-3 at 6). Moreover, any arguments that FEMA failed to consider South Bethany's dunes and replenished beach in violation of federal regulations is more appropriately reserved for the court's review of FEMA's final agency action under the arbitrary and capricious standard. (See Doc. 11-3 at 251-52). We will affirm the magistrate judge's decision to deny Bintz's request for discovery on beach replenishment.

### 3. *Compass PTS JV*

Bintz next requests discovery of information and documents regarding an independent review of the base flood elevations along Ocean Drive conducted by Compass PTS JV. (Doc. 25 at 11-12, 20). He raises two concerns with regard to the Compass review and subsequently issued memorandum. (Id.) *First*, FEMA ostensibly withheld the document from Bintz in violation of its FOIA obligations which deprived Bintz of the opportunity to address the report in his administrative appeal. (Id. at 11). *Second*, Bintz challenges Compass's "independence" and in support of this position points to the five-year, multimillion dollar contract FEMA awarded Compass in 2014 and a mailing address discrepancy on the Compass

memorandum.[5] (Id. at 11-12). These allegations do not support a finding of agency bias.

The Compass memorandum is part of the administrative record. (See Doc. 11-2 at 353-55). The court may consider the memorandum's substantive content as pertains to FEMA's decision to reinstate the 13-foot base flood elevation in the 2015 Preliminary Map when reviewing FEMA's final agency action. See Christ the King Manor, 730 F.3d at 305. Bintz's allegation that FEMA improperly withheld the memorandum when responding to his FOIA request is insufficient to establish agency bias in the base flood elevation determination process. We are likewise unpersuaded by Bintz's unfounded attacks on Compass's credibility. An expensive, long-term contract does not render a government contractor incapable of providing professional, independent work product. Bintz points to no authority or evidence in support of his assertion that Compass was incapable of conducting an independent review of FEMA action. (See Docs. 25, 31). The magistrate judge did not err in denying Bintz's request for probing discovery regarding the Compass memorandum.

### 4. *Documents Responsive to FOIA Request*

The magistrate judge denied Bintz's final request for discovery identifying documents Bintz believes were responsive to his FOIA request and wrongfully withheld by FEMA. (Doc. 30 at 6-7; see also Doc. 25 at 20). Bintz submitted a FOIA request to FEMA on March 29, 2015 seeking documentation associated with

---

[5] The typographical address error on the Compass letterhead is of no moment.

11

FEMA's 2013 and 2015 Preliminary Maps. (Doc. 1 ¶ 63; Doc. 8 ¶ 63; Doc. 11-5 at 1-3). FEMA responded on March 29, 2016. (Doc. 1 ¶ 63; Doc. 11-5 at 3-59). Bintz appealed FEMA's final response and the Office of Administrative Law Judges issued a letter indicating that "FEMA did not conduct an adequate search before sending its final response." (Doc. 25-3 at 2). The letter stated that FEMA would be directed to conduct an additional review of Bintz's file and provide any responsive documents within thirty days. (Id.) FEMA avers that additional responsive documents are currently under quality control review. (Doc. 27 at 15 n.12).

FEMA's incomprehensive initial search for documents responsive to Bintz's request may warrant some skepticism with respect to the *FOIA matter*, but it does not establish clear bias by the agency's decisionmakers. Nor does FEMA's lackluster FOIA response evince deficiencies in the separate and distinct administrative record prepared by the agency. Moreover, FEMA is currently reviewing additional documents responsive to Bintz's FOIA request in compliance with the remand order of the Office of Administrative Law Judges. (Id.) FEMA represents to the court that any documents considered in rendering the base flood elevation determinations, and that are also pertinent to Bintz's FOIA request, have already been included in the administrative record. (Id. at 15). For all of these reasons, we concur with the magistrate judge's decision.

### C. Supplementary Allegations of Agency Bias

Bintz raises several additional allegations in support of his argument that FEMA acted with bias in its determination of base flood elevations for South Bethany. He first contends that FEMA violated federal regulations by improperly

12

treating Junkin's email as a valid appeal of the initial 2013 Preliminary Map. (Doc. 25 at 4, 8-10). A party whose property rights may be adversely affected by a proposed base flood elevation may appeal such determinations by demonstrating that the proposal is scientifically or technically incorrect through proper supporting evidence. See 42 U.S.C. § 4104(b); 44 C.F.R. § 67.6. The magistrate judge correctly noted that Section 67.6 safeguards a right to appeal base flood elevation determinations but does not purport to limit when FEMA may reevaluate same. (Doc. 30 at 13); see generally 44 C.F.R. § 67.6. FEMA rescinded the 2014 Map upon learning that Junkin lacked authority to appeal on South Bethany's behalf and following objections by the town of South Bethany and residents thereof. Any averment that FEMA had no proper legal foundation upon which to reconsider the base flood elevation determinations undergirding its 2013 and 2015 Preliminary Maps is best addressed during our evaluation of FEMA's final agency action.

In further support of this claim of agency bias, Bintz points to an email from an employee of the Delaware Department of Natural Resources and Environmental Control. (Doc. 25-1 at 2). Therein, the employee speculates that FEMA treated the Junkin email as an appeal to circumvent the public review period. (Id.; see also Doc. 25 at 10). Without corroboration, the employee's conjecture is woefully insufficient to warrant a finding that FEMA itself acted with bias in its base flood elevation decisionmaking process.

Bintz lastly asserts that FEMA provided inaccurate, incomplete, and misleading information at the June 12, 2015 open house in explaining its methodology for the 13-foot base flood elevation determination. (Doc. 25 at 12-13).

13

He also alleges FEMA violated the Biggert-Watters Act, 42 U.S.C. § 4101b, by "creating dune, dune toe, and dune erosion slope data for transect 1610." (Doc. 25 at 12-13, 15-16). The magistrate judge noted that these allegations were suggestive of an arbitrary and capricious decision by FEMA in its base flood elevation determination but not indicative of *bias* in that decisionmaking process. We agree. Bintz's concerns regarding transect- and elevation-related data are best raised in conjunction with our review of FEMA's final agency action.

IV. **Conclusion**

The court will affirm Judge Thynge's order (Doc. 30) of October 19, 2017. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: February 26, 2018